## J. HOWARD CHRISTIAN V. THE STATE.

No. 17690. Delivered February 19, 1936.
Rehearing Denied April 1, 1936.

The opinion states the case.

*Rogers & Spurlock,* of Fort Worth, for appellant.

*Will R. Parker,* Criminal District Attorney, and *Leo Brewster, Herbert C. Wade,* and *Homer B. Green,* Assistant Criminal District Attorneys, all of Fort Worth, and *Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

HAWKINS, JUDGE.—The appellant was tried and convicted of the offense of forgery and his punishment was assessed at confinement in the state penitentiary for a term of two years.

The first count of the indictment, upon which appellant was convicted, omitting the formal parts, reads as follows:

"That J. Howard Christian in the County of Tarrant and State aforesaid, heretofore on the 8th day of January, A. D. 1935, did then and there without lawful authority and with intent to injure and defraud, wilfully and fraudulently make a certain false instrument in writing, which said false instrument was then and there in the tenor as follows, to-wit:

"Application for Registration. January 8, 1935.

"To the Secretary, Texas State Board of Medical Examiners, 918-19 Mercantile Building, Dallas, Texas.

"Herewith I enclose currency, for $2.00 in payment of fee for Annual Registration for the year 1935, and below give the information required by law, as follows:

"My full name is Jas. Monroe Hart

"(As John Richard Doe).

"My postoffice address is 815 Houston, Fort Worth, Texas.

"My age is 48, I belong to the Alopathic school of practice.

"The degree Doctor of Medicine was conferred on me by the University of Nashville, Tenn., College, on May 17, 1908.

"My Texas license is No. 7958, and dated Nov. 10th, 1908.

"My license is recorded in counties of Texas as follows: Tarrant.

"I certify that the foregoing statements are correct. Please send annual permit.

"(Signed) Jas. Monroe Hart, M. D.

"Permit must be secured before one begins practice in Texas and on or before January 1st each year thereafter.

"The said defendant then and there intending and causing said instrument to mean, and to be, an application to the Texas State Board of Medical Examiners to register one Jas. Monroe Hart as a licensed physician in Fort Worth, Tarrant County, Texas, and to issue to the said Jas. Monroe Hart a permit to practice medicine in said State for the year 1935, and the said defendant then and there intending and meaning by the name, words, and terms, 'Jas. Monroe Hart, M. D.' and causing said instrument to mean 'Dr. Jim Monroe Hart,' a former physician of Fort Worth, Tarrant County, Texas * * *."

The evidence heard upon the trial is not brought before us, and the sole point presented on appeal is the contention that the indictment fails to charge the offense of forgery, that is, that the instrument described, if true, related to no pecuniary obligation, and in no manner affected any property. We are not advised by any innuendo averments whether the "permit" was issued by the State Board of Medical Examiners, and if so, what became of it. To understand the purpose of the purported application it is necessary to go to the law requiring registration of physicians. Art. 4495, R. C. S., as amended by 42nd Legislature, Reg. Session, Ch. 49, provides for the creation of the Texas State Board of Medical Examiners. Art. 4498, R. C. S., and Art. 739, P. C., as amended at the same time, makes it unlawful for anyone to practice medicine in this state who has not registered in the District Clerk's office where such registration is directed to be made "the certifiicate evidencing the right (of such person) to practice medicine, as issued to him by the Texas State Board of Medical Examiners." The absence of such record in any place where such record is required is made prima facie evidence of the lack of possession of such certificate. Also, by Act of the 42nd Legislature, Reg. Session, Ch. 37, p. 55, every person engaged in the practice of medicine was required to register as such practitioners with said Medical Board before the first day of January, 1932, and thereafter to register in like manner annually on or before the first day of each succeeding January. For the annual registration a fee of $2.00 was fixed by statute which fee was to accompany a written application for such annual registration. Upon receiving the application and the $2.00 the said Medical Board —being satisfied that the applicant was a licensed practitioner —was required to issue to the applicant "an annual registration receipt certifying that the applicant has filed such applica-

tion and has paid the registration fee mentioned for the year in question." With knowledge of the requirements of the law regulating the practice of medicine it becomes perfectly clear. that the instrument described in the indictment purported to have been an application signed by Dr. Hart, requesting the Medical Board to issue his annual registration receipt for the year 1935, which, under the terms of the law could be secured at any time before the expiration of sixty days after January 1st, but if not secured within such time any license to practice previously issued was to be suspended. Therefore, the importance of the annual permit becomes obvious.

By Art. 979, P. C., forgery is defined as follows:

"He is guilty of forgery who without lawful authority, and with intent to injure or defraud, shall make a false instrument in writing purporting to be the act of another, in such manner that the false instrument so made would (if the same were true), have created, increased, diminished, discharged or defeated any pecuniary obligation, or would have transferred, or in any manner have affected any property whatever."

That the instrument in question did not create or in any manner affect a pecuniary obligation is apparent from the face of it. The recital in the application that the purported maker was sending to the Medical Board the $2.00 fee required by law, if true, made it the duty of the Medical Board to issue. the "annual registration receipt", if the applicant was otherwise entitled to it. The thing to be accomplished by the purported instrument was the issuance of the annual registration receipt. The only question we need to consider in determining the sufficiency of the indictment is whether if true the instrument in any manner affected property. A certificate authorizing one to practice medicine, and the annual registration receipt covering the current year, confers a valuable right upon the person to whom it is properly issued, but the right to so practice is a privilege to such person and not property in the sense in which that word is generally understood, and which distinction seems to be recognized in Sec. 19, Art. 1 of the Bill of Rights of this State, which guarantees that "no citizen of this State shall be deprived of life, liberty, property, *privileges*, or immunities * * * except by the due course of the law of the land." While it is unquestionably true that the privilege to practice medicine is not property, evidence of the right to exercise the privilege should not be confused with the privilege. itself.

Under out statute the privilege to practice medicine is evi-

denced by the registration certificate and the annual registration receipt issued by the State Medical Board, and when so issued they become "instruments of writing". It remains to determine whether such "annual registration receipt" was property, and if so, whether it was affected by the alleged forgery of Dr. Hart's name to the application described in the indictment. We find no definition of "property" in our statutes relating to forgery, but in the theft statute is found a most comprehensive definition. Art. 1418, P. C., reads as follows:

"The term 'property' as used in relation to the crime of theft, includes money, bank bills, goods of every description commonly sold as merchandise, every kind of agricultural produce, clothing, any writing containing evidence of an existing debt, contract, liability, promise, or ownership of property real or personal, any receipts for money, discharge, release, acquittance, and printed book or manuscript, and in general any and every article commonly known as and called personal property, and all writings of every description, provides such property possesses any ascertainable value."

It would appear to follow that the "annual registration receipt" when issued would be the subject of theft if it had any ascertainable value. That part of the theft statute referred to was considered in Worsham v. State, 56 Texas Crim. Rep., 253, and we find the following expression used in the opinion:

"It was the evident intent and purpose of the law to punish a theft of bills, notes, checks *and other instruments of writing* the result of which might embarrass, discommode, or injure the rightful owner," of course, provided the instruments in question had any ascertainable value. It is difficult to see why property which would be the subject of theft would not also be the subject of forgery if the false instrument affected such property.

The State relied largely upon Alexander v. State, 12 S. W., 595, which case dealt with a forged instrument in writing, requesting a person who was holding a diploma which had been issued to the purported writer of the instrument that the diploma be sent to him by the bearer. This court upheld the conviction, clearly recognizing the distinction between the privilege conferred by the diploma and the evidence of' the privilege which was the diploma itself. Appellant combats the application of the Alexander case to the one under consideration, and calls attention to the fact that the indictment there alleged that the diploma was valued at a certain amount, whereas there is no such averment in the present indictment. It will be observed that the case seems to have been disposed

of without reference to the averment of value. It is also urged by appellant that the forged order in Alexander's case had reference to an instrument of writing already in existence and hence the forged instrument there affected the transfer of property, while in the present case the forged instrument related to an annual registration receipt which had not yet been issued by the State Medical Board. In other words, appellant contends that the alleged forged application does not come within the terms of Art. 990, P. C., which is explanatory of a part of the definition of forgery, and which said article reads:

"By an instrument which would 'have transferred or in any manner have affected' property, is meant every species of conveyance, or undertaking in writing, which supposes a right in the person purporting to execute it, to dispose of or change the character of property of every kind, and which can have such effect when genuine."

From the averments of the indictment read in connection with the law regulating the practice of medicine it appears that the alleged forged instrument, if true, showed that Dr. Hart was entitled to an "annual registration receipt" for the year 1935, and was enclosing $2.00, the fee due for same, and requesting the State Medical Board to issue and send to him said receipt. Appellant was no more entitled to authorize issuance of the receipt than he was to exercise the privilege granted thereunder. By the terms of the indictment Dr. Hart made no request for the issuance of the receipt, but appellant without authority and with intent to injure and defraud signed Dr. Hart's name to the application, which, if true, would have obligated the State Medical Board to issue and thereby create or bring into existence property—the "annual registration receipt". We perceive no valid reason why said Article 990 would not embrace property the very creation of which would be brought about by the alleged forged instrument if it were true.

It is clear, we think, that the intent to injure must of necessity turn upon the evidence, as well as the question whether the registration receipt had any ascertainable value. Having no facts before us we think it beyond our province to say as a matter of law the property designed to be affected had no ascertainable value, or that appellant had no intent to injure when he made the alleged false instrument described in the indictment.

The main question presented is not without difficulty. No exact precedents have been found. After giving it our earnest

consideration we have concluded that the indictment is not subject to the defect urged against it.

The judgment is affirmed.

*Affirmed.*

## ON MOTION FOR REHEARING.

LATTIMORE, JUDGE.—We have again considered this case in the light of appellant's motion, but are unable to believe it not correctly decided. That the certificate issued by the State Medical Board to Dr. Hart, whose name was signed to the alleged forged instrument, would be the property of Dr. Hart if so issued upon a genuine application, which property would be of value to Dr. Hart, seems not open to dispute. The fact that property might be of such kind or character as not to have a market value in nowise militates against the fact that it is property and of value to the owner and possessor thereof such as that he might offer a plea of defense of property in a homi-cide case; also it is such property as would suffice to support a conviction for malicious mischief if wantonly destroyed, and we see no reason in law or common sense to attempt to draw a distinction between property in such cases and in this where the question is whether the alleged forged instrument could tend to affect property.

There are other reasons which seem as applicable to the writer as the one advanced in our original opinion for believing the instrument in question to be one affecting property, which the writer does not deem it necessary to set forth.

The motion for rehearing is overruled.

*Overruled.*

MORROW, P. J., absent.